IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

RONALD ROGERS,

               Petitioner,

    v.

SUPERINTENDENT ROBERT GILMORE,
et al.,

               Respondents.

CIVIL ACTION
NO. 19-5663

**OPINION**

**Slomsky, J.**                                                                        **August 10, 2021**

## I.    INTRODUCTION

Before the Court is a pro se Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Doc. No. 1) filed by Petitioner Ronald Rogers, a state prisoner incarcerated at State Correctional Institution at Greene ("S.C.I. Greene") in Greene County, Pennsylvania.  In his Petition, Petitioner raises two ineffective assistance of counsel claims premised on his trial counsel's conduct.  On January 26, 2021, following a review of the filings and the pertinent state court record, United States Magistrate Judge Carol Sandra Moore Wells issued a Report and Recommendation ("R&R") (Doc. No. 16), recommending that the first claim be granted and the second claim be denied without issuing a certificate of appealability.  On March 8, 2021, Respondents filed Objections to the R&R (the "Objections").  (Doc. No. 19.)

For the reasons discussed infra, the Court will sustain Respondents' Objections (Doc. No. 19), approve and adopt only the portion of Claim Two discussed in the R&R (Doc. No. 16) which was not objected to, deny Petitioner's Petition (Doc. No. 1), but issue a certificate of appealability.[1]

---

[1]    For purposes of this Opinion, the Court has considered Petitioner's Habeas Corpus Petition

## II.   BACKGROUND

### A.   Procedural History

The facts of Petitioner Rogers' case are summarized as follows:

On August 23rd 2006, at approximately 7:10 PM, [Petitioner] and Demetrius Hayes were involved in a shootout in the area of 10th and Thompson Streets in the City and County of Philadelphia.  William Green, an innocent bystander, (hereinafter referred to as the Decedent), was found dead outside the doorway of 1257 North 10th Street [following the shooting].

Dr. Edwin Lieberman, Assistant Medical Examiner for the County of Philadelphia, testified that the Decedent died as a result of a single gunshot wound to the head and that the manner of death was homicide.  Based on his analysis of the recovered bullet, he opined that the gunshot wound was the result of a ricochet shot.

Myra Summers testified that on August 23, 2006, at approximately 7:10 PM, she was driving her vehicle at the intersection of 10th and Thomspon [sic] Streets.  She was stopped behind a dark-colored Mercedez–Benz.  She saw a male standing on the corner close to the vehicle.  She testified that as she was waiting for the Mercedez–Benz to move, she was listening to the radio.  She looked down for a second and then heard a[ ]lot of gunfire and looked up.  She saw someone in the Mercedez–Benz and the flash from a gun inside the Mercedez–Benz and the male standing at the corner firing a gun at the Mercedez[-]Benz.  As the Mercedez–Benz sped away, she saw a male standing on the other side of the street begin firing at the Mercedez–Benz as it drove off.  Ms. Summers could not say who fired the first shot.  Ms. Summers testified that she then proceeded down 10th Street, turned onto Girard Avenue and flagged down a police car at the intersection of 11th and Girard. [Ms. Summers also provided police with a signed, written statement shortly after the shooting].

Tyrone Singleton testified that he met with his friend, Demetrius Hayes, at the corner of 10th and Master Streets on August 23, 2006.  He got into the passenger seat of Mr. Hayes' black Mercedez–Benz.  Mr. Hayes was seated in the driver['s] seat.  Mr. Hayes drove down 10th Street towards Thompson Street.  Mr. Hayes pulled his vehicle over toward the curb to where [Petitioner] was standing.  While the vehicle was stopped, Mr. Singleton saw two (2) friends of [Petitioner's] . . . walking on Thompson Street toward Mr. Hayes' vehicle.  He saw another male he knew to be a friend of [Petitioner's] across the street standing on the corner.

Mr. Singleton heard [Petitioner] say to Mr. Hayes that "he needs $6,000.00 or it's on."  [Petitioner] then pulled a weapon from his waist and began firing.  Mr.

---

(Doc. No. 1), Respondents' Response to the Petition (Doc. No. 8), the Report and Recommendation (Doc. No. 16), Respondents' Objections to the Report and Recommendation (Doc. No. 19), and the pertinent state court record.

Singleton leaned over and heard bullets hitting the car.  Mr. Hayes then pulled a gun that he had next to him on his seat and returned fire two (2) or three (3) times and then took off at a high rate of speed.  Mr. Singleton continued to hear gun shots coming from outside the car as they pulled away.

Commonwealth v. Rogers, No. 2834 EDA 2011, 2013 WL 11262994, at *1 (Pa. Super. Ct. June

19, 2013) (second, third, fourth, fifth, and sixth alterations in original).

In his statement to the police, at Petitioner's preliminary hearing, and at Mr. Hayes' trial (who was separately tried and acquitted for the killing of the Decedent), Mr. Singleton testified that Petitioner shot first into Mr. Hayes's car.  [See Rogers, 2013 WL 11262994, at *2.]  Mr. Hayes fired back and drove off as Petitioner continued to shoot at the vehicle.  Id. at 1.  A bullet matching Petitioner's gun ricocheted, striking and killing the Decedent.  Id.  On the first day of Petitioner's trial, Mr. Singleton revised his prior version of the events and testified that Mr. Hayes shot first at Petitioner, which caused Petitioner to return fire.  Id. at 2.  After this testimony, the trial judge stopped proceedings, excused the jury and, then, admonished Mr. Singleton:

> Now that we are all here, let me express this to you, Mr. Singleton, in no uncertain terms: I don't know what your street mind thinks, but I am going to explain it to you.  You maybe made a mistake today.  I am not sure.  You may have heard incorrectly.  You just took the stand in this case, this week, and said that [Hayes] shot first, but last week, you said, under oath, and on this same record, with the same stenographer, and the same Judge, that [Petitioner] shot first.

> You have now just placed yourself—the District Attorney was getting ready to see if that was a mistake.  I stopped it there, before you said one more thing.  Be very careful what you do, because that's Perjury, and it is Perjury on the record, and it is Perjury in front of the same Judge.

> If you are playing some little game here, guess what is going to happen?  You are going to get charged with Perjury.  Now, this is a Homicide case, so I will make sure that you receive a maximum consecutive sentence.  Think about who you are helping out here, because it isn't yourself.

> Now, we are going to take a break for today.  Do some long hard thinking tonight.  You get on this stand, and you tell the truth.  You have been warned.  So, you can tell whatever story you want, but I am telling you now: If you say that again, it is Perjury, because it is on the record.  If it is the truth, and you perjured yourself before, then live with it, but if it is not the truth, and you think that you are

3

doing some favor, or you are afraid, guess who is getting the
sentence here?  You, and it will be the maximum, consecutive.

Take him back.

Commonwealth v. Rogers, No. 2799 EDA 2016, 2017 WL 3496569, at *2 (Pa.
Super. Ct. Aug. 16, 2017).

On the next day of trial, Mr. Singleton changed his initial testimony and stated that
Petitioner, not Mr. Hayes, fired his gun first.  Rogers, 2017 WL 3496569, at *2.  Mr.
Singleton explained that he made a mistake beforehand and said the wrong thing
because he was nervous.  Id.  Petitioner's trial counsel did not object to the trial
judge's admonishment of Mr. Singleton nor did he ask Mr. Singleton to inform the
jury that the trial judge's threat had preceded the dramatic change in his testimony.
Id.

At the conclusion of trial, the jury found Petitioner guilty of third-degree murder,
possessing a firearm without a license, possessing an instrument of crime, and
aggravated assault.  Rogers, 2017 WL 3496569, at *2.  On May 5, 2012, he received
a sentence of 16 to 32 years of imprisonment.  Id.

(Doc. No. 16 at 2-3) (second and third alterations in original).

On October 3, 2011, Petitioner timely appealed his conviction and sentence to the Superior

Court of Pennsylvania, and on June 19, 2013, the Superior Court affirmed.  (See Doc. No. 8-3 at

2); Rogers, 2013 WL 11262994, at *1-2.   On August 5, 2014, Petitioner filed a pro se Post

Conviction Relief Act ("PCRA") petition, and on August 9, 2016, the PCRA court dismissed the

petition.  (See Doc. No. 8-3 at 2); Rogers, 2017 WL 3496569, at *2-3.

On August 23, 2016, Petitioner appealed the PCRA court's dismissal of his petition to the

Superior Court.  (See Doc. No. 8-3 at 2); Rogers, 2017 WL 3496569, at *3.  Petitioner raised the

following issues on appeal:

I. Did the PCRA court abus[e its] discretion in dismissal of [Petitioner's] PCRA .
   . . wherein [Petitioner] argued . . . counsel was ineffective for failing . . . to
   object to and preserve for appellate review . . . the court's improper pressuring
   of the Commonwealth's key witness [Tyrone Singleton?]

II. Was the PCRA court's dismissal . . . improper . . . wherein [Petitioner] argued .
    . . counsel was ineffective for failing to bring forth evidence of the violent

> history between [Petitioner] and Demetrius Hayes and request a <u>McCusker</u>[2]
> charge after revealing that provocation was established prior to the exchange
> between them[?]

<u>Rogers</u>, 2017 WL 3496569, at *3 (first and eighth alterations in original).

Regarding the first issue, the Superior Court held that Petitioner's "claim that his trial counsel was ineffective for failing to object to the trial court's intervention regarding Singleton's testimony ha[d] arguable merit[.]" <u>Id.</u> at *5. The court found the facts of Petitioner's case resembled the facts in <u>Commonwealth v. Fornicoia</u>, 650 A.2d 891 (Pa. Super. 1994) and <u>Commonwealth v. Laws</u>, 378 A.2d 812 (Pa. 1977), wherein the trial courts' admonishment of a witness about inconsistent testimony, outside the presence of the jury, constituted reversible error. <u>See id.</u> at *4-5. "Given the prevailing caselaw on this issue," coupled with the fact that the PCRA court "failed to hold an evidentiary hearing[] or assess the other two prongs of an ineffectiveness query,"[3] the Superior Court vacated and remanded the first issue to the PCRA court "for an evidentiary hearing." <u>Id.</u> at *5. "Thereafter, should either side appeal the PCRA court's disposition of [Petitioner's] petition, the PCRA court shall issue a written decision thoroughly explaining its reasoning." <u>Id.</u>

---

2   <u>Commonwealth v. McCusker</u>, 292 A.2d 286, 389-90 (Pa. 1972) (establishing three-prong test for adequate provocation "for a jury finding of voluntary manslaughter").

3   "With regard to PCRA claims alleging ineffective assistance of counsel, this [c]ourt has held:

> Counsel is presumed to have been effective. To overcome this presumption, a PCRA petitioner must plead and prove that: (1) the underlying legal claim is of arguable merit; (2) counsel's action or inaction lacked any objectively reasonable basis designed to effectuate his client's interest; and (3) prejudice, to the effect that there was a reasonable probability of a different outcome if not for counsel's error."

<u>Commonwealth v. Rogers</u>, No. 2799 EDA 2016, 2017 WL 3496569, at *4 (Pa. Super. Ct. Aug. 16, 2017) (quoting <u>Commonwealth v. Andrews</u>, 158 A.3d 1260, 1263 (Pa. Super. Ct. 2017)).

On June 26, 2018, after holding an evidentiary hearing, the PCRA court issued an opinion

denying Petitioner's PCRA petition.  (See Doc. No. 8-3.)  The PCRA court stated as follows:

> At the evidentiary hearing after remand, trial counsel explained that his basis for not objecting to the [c]ourt's admonishment of Singleton, and not bringing out the court's admonishment before the jury, was that he did not want to adopt Singleton as a witness for the defense.  Trial counsel fully expected Singleton to testify that [Petitioner] was the initial shooter and based his defense on that fact.  Counsel's defense was that Singleton should not be believed because he was Hayes' friend and a passenger in the vehicle that was shot at numerous times.  A reasonable person would fully expect Singleton to be adverse to [Petitioner] as he was a party with interest and bias.  Furthermore, Singleton had convictions for crimes of dishonesty and was currently incarcerated.[4]  In contrast, the defense had an independent witness with no criminal background[:]  Myra Summers.  Summers was driving directly behind Hayes' vehicle and gave a statement to detectives that the person in the vehicle shot first.  This was the witness the Defense wanted the jury to believe.  It would be much more implausible for the jury to accept Singleton's newfound testimony that his friend shot first, particularly in light of the three prior statements given by Singleton that [Petitioner] shot first.  Quite simply, it would not benefit the defense for Singleton to change his testimony so there would be no reason for counsel to object to the court's admonishment.
>
> Therefore, counsel had a reasonable basis for not objecting to the court's admonishment of Singleton and for not highlighting it to the jury.

---

[4]   As the PCRA court later explained in its opinion:

> Counsel had planned to call Singleton a liar from the start so the court's admonishment of Singleton was of no moment to the defense.  In fact, counsel highlighted that Singleton was a liar in his closing statement:
>
>> []The Judge is going to give a charge on what's called crimen falsi.  Basically, what that means is that a person with prior convictions – normally, that evidence does not come before the jury unless, however, those convictions involve dishonesty, or a falsehood, and in this particular case, we have Mr. Singleton, who has a conviction for Retail Theft, a conviction for Forgery, and also a conviction for Theft by Deception, and you can consider those convictions in evaluating whether or not he is being honest and truthful with you, because you know, a person who has been convicted of crimes of falsehood and dishonesty would be more likely than not to testify falsely under oath.

(Doc. No. 8-3 at 11-12.)

(Id. at 10.)   Petitioner timely appealed the PCRA court's decision to the Superior Court.   See
Commonwealth v. Rogers, No. 728 EDA 2018, 2019 WL 3103863, at *1 (Pa. Super. Ct. July 15,
2019).   This time, Petitioner only proceeded on the first issue previously raised on appeal—
whether trial counsel was ineffective for failing to object to the court's admonishment of Singleton.
See id. at *4.

      The Superior Court affirmed on appeal, finding that "the PCRA court [opinion] accurately
summarized trial counsel's testimony as to why he did not object to the trial court's admonishment
of Singleton and place the admonishment in front of the jury." Id. at *5.   The court first noted that
Petitioner's "defense at trial was self-defense, premised on the claim that Hayes fired first." Id. at
*4.   The court explained as follows:

> [T]rial counsel repeatedly testified that he had no basis for objecting to the
> admonishment because regardless of how Singleton testified, his testimony would
> not have been determinative because he lacked credibility.   Trial counsel further
> testified that the most credible defense witness was Ms. Summers who happened to
> be travelling in a vehicle behind the Hayes vehicle, witnessed the shooting, and had
> no connection to any individual involved in the shooting.   Based on trial counsel's
> testimony, the PCRA court properly determined that counsel had a reasonable basis
> for failing to object to the trial court's admonishment of Singleton and for failing
> to place the admonishment in front of the jury.   Therefore, [Petitioner] failed to
> satisfy the reasonable basis prong of the ineffectiveness inquiry and the PCRA court
> properly denied his petition.

Id. at *5 (citations omitted).

      The court also held that the PCRA court's denial of Petitioner's PCRA petition was proper
because he failed to prove the prejudice prong of an ineffectiveness inquiry.   See id. at *6.   In
reaching this conclusion, the court stated as follows:

> [W]ith respect to prejudice, we note that in his brief to this court, [Petitioner] claims
> that:
>
>> [s]ince Ms. Summers never gave trial counsel testimony that was
>> usable to support the self-defense claim, counsel's failure to proceed
>> with impeachment of Singleton for changing testimony after the trial

7

court admonition prevented [Petitioner] from having the jury fully see Singleton entirely to decide if his initial direct testimony was trustworthy.  <u>Had the jury believed Singleton was trustworthy about this, there was a reasonable probability a different outcome would have occurred.</u>

[Petitioner's] brief at 10 (emphasis added).  In order to establish prejudice, however, a petitioner is required to "show that but for the act or omission in question, the outcome of the proceedings would have been different."  [<u>Commonwealth v. Washington</u>, 925 A.2d 586, 594 (Pa. 2007)] (citation and internal quotation marks omitted).  [Petitioner's] claim that if the jury believed Singleton, "there was a reasonable probability a different outcome would have occurred" falls far short of establishing that but for trial counsel's failure to object and place the admonishment in front of the jury, the outcome would have been different.

. . . [I]n concluding that [Petitioner] failed to demonstrate prejudice, the PCRA court explained:

> Had Counsel brought out before the jury that Mr. Singleton's testimony could possibly have been coerced by the [c]ourt, irregardless [sic], Mr. Singleton's testimony was still inconsistent testimony because there is a track record.  He gave a statement to police.  He testified at the preliminary hearing.  He testified at a prior trial just a week earlier.  So what we would have is still an unreliable witness.

> Secondly, all witnesses were consistent, and that being Mr. Singleton, and Miss Summers and ballistics, basically, that [Petitioner's] weapon, being held by [Petitioner], continued to fire at a vehicle that was fleeing, thereby, hitting an innocent bystander with a bullet.

> It was proven that it was [Petitioner's] gun because [Petitioner] was arrested with that particular weapon two months later that fired the fatal bullet and that nine fired cartridge casings were found at the scene and there was testimony that the vehicle was riddled with bullets or had bullet holes in it and the vehicle took off immediately upon shots being fired, indicating that whoever was firing the weapon, [Petitioner] continued to fire at a fleeing vehicle which no longer posed a threat to [Petitioner], thereby, hitting an innocent bystander.

> So that would not make out self-defense nor would it qualify under voluntary manslaughter or a mistaken belief in self-defense.  So it really would not have changed the result of the proceedings.

Notes of testimony, 2/23/18 at 63-64.  Accordingly, denial of [Petitioner's] PCRA petition would also have been proper because [Petitioner] failed to demonstrate prejudice.

Id. at *5-6 (third and eleventh alterations in original).

### B.     The Instant § 2254 Petition

On December 2, 2019, Petitioner filed the instant pro se Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254.  (Doc. No. 1.)  In the Petition, Petitioner raises two claims for relief: ineffective assistance of trial counsel (1) for "fail[ure] to reveal by cross-examination, motion for a mistrial, object to and preserve [sic] for appellate review, the trial court[']s improper pressuring of the Commonwealth's key witness[, Tyrone Singleton,] during trial testimony" ("Claim One"); and (2) for "fail[ure] to bring forth evidence of the violent history between the Petitioner and . . . Demetrius Hayes, and request a McCusker charge after revealing the provocation was established prior to the exchange between both parties" ("Claim Two").  (Id. at 6, 9.)

Regarding Claim One, Petitioner avers that trial counsel was ineffective because after the trial court admonished Singleton for his inconsistent testimony, "counsel made no objections[] and court . . . rested for the day."  (Id. at 6.)  "When trial resumed on the following day, Mr. Singleton was placed back onto the witness stand to resume his testimony[,]" and "Mr. Singleton changed his testimony back to his original version, stating that the Petitioner was the aggressor.  Once again, counsel made no objection and . . . Petitioner was convicted of 3rd Degree Murder, as well as[] other related offenses."  (Id.)

Regarding Claim Two, Petitioner asserts that trial counsel was ineffective when he "failed to bring forth evidence of the violent history between the Petitioner and . . . Demetrius Hayes" and "failed to request a McCusker charge after revealing that significant provocation was established prior to the ex[c]hange on August 23, 2006."  (Id. at 9.)  According to Petitioner, "[t]rial counsel was given several opportunities to present this evidence, where . . . Petitioner suffered from a

gunshot wound to his right leg at the hands of . . . Mr. Hayes, three months prior to the August 23, 2006 incident."   (Id.)   However, "[t]rial counsel failed to unveil the fact even after the Commonwealth made vague implications about the history between the two."   (Id.)   For this reason, Petitioner submits that counsel was ineffective for "both failing to make known Petitioner having been shot by Hayes and failing to request a [McCusker] charge that would allow jurors to consider the prior exchange between them a cumulative instance of provocation."   (Id.)

On March 13, 2020, Respondents filed a Response to the Petition.   (Doc. No. 8.) Respondents argue that the Petition should be denied because the state courts reasonably adjudicated Claim One on the merits and because Claim Two is procedurally defaulted.   (See id. at 18.)   Specifically, as to Claim One, Respondents aver that "the state courts [reasonably] conclude[d] that declining to object to the trial judge's outside-the-jury's-presence admonition to witness Singleton fell within the wide range of reasonable professional assistance and that [Petitioner] was not prejudiced as a result of counsel's purportedly deficient conduct."   (Id. at 11.) As to Claim Two, they believe it is procedurally defaulted because Petitioner "did not identify or argue the claim in his post-remand appellate brief" to the Pennsylvania Superior Court.   (Id. at 18.) "In any event, the [PCRA c]ourt found that this claim lacked merit, and [Petitioner] has not shown any basis to find that the Superior Court would have held otherwise had the claim been identified and argued to it in [Petitioner's] post-remand briefing."   (Id.)

C. The R&R and Respondents' Objections

On January 26, 2021, United States Magistrate Judge Carol Sandra Moore Wells issued a Report and Recommendation ("R&R"), recommending that Petitioner be granted habeas relief on Claim One, and that Claim Two be denied without an evidentiary hearing.   (See Doc. No. 16 at 21.)   Regarding Claim One, in the R&R Judge Wells disagreed with the state courts' rulings and found that Petitioner satisfied both prongs of the Strickland v. Washington ineffective assistance

of counsel standard.[5]  (See id. at 16.)  To start, Judge Wells noted in the R&R several reasons why "the Superior Court unreasonably applied the first part of the Strickland test" for ineffective assistance of counsel.  (Id. at 11.)

First, the Magistrate Judge found "[t]he state court's acceptance of trial counsel's explanations for why he acquiesced in the trial court's impropriety [was] unreasonable" because, contrary to counsel's explanations, "case law dating back to 1977" shows that "the trial court's impropriety was manifest[.]"  (Id. at 11-12.)  Second, while the PCRA court opined that "a reasonable person would fully expect Singleton to be adverse to the Petitioner as he was a party with interest and bias[,]" the Magistrate Judge found this unreasonable as Singleton "was not a 'party' in this case[,]" and "if he had any interest or bias, it would be towards the other shooter, Mr. Hayes, his close friend[.]"  (Id. at 12.)[6]  Third, the Magistrate Judge thought the PCRA court's finding that counsel was effective "because the defense already had an independent witness with no criminal background, Ms. Summers[,]" was unreasonable because "at trial, Ms. Summers proved to be an inconsistent witness, who testified (contrary to her police statement) that she could not determine who shot first, thereby, undermining trial counsel's preferred self-defense theory." (Id. at 12-13.)

After delineating the ways the state courts unreasonably applied Strickland's first prong, Magistrate Judge Wells applied de novo review[7] and found:

---

[5]   The two-prong standard for ineffective assistance of counsel claims set forth in Strickland v. Washington, 466 U.S. 668 (1984) is discussed in Section IV.A, infra.

[6]   The R&R further stated that "[t]he PCRA court never explained why Mr. Singleton would ignore his bias toward Mr. Hayes and seek to exonerate Petitioner."  (Doc. No. 16 at 12.)

[7]   In the R&R, Magistrate Judge Wells analyzed the Petition pursuant to the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), and applied de novo review because it found the state courts' adjudication of Petitioner's claims either "resulted in

that trial counsel's performance was objectively unreasonable.   A reasonable attorney should have realized immediately, based upon long-standing Pennsylvania authority, that the trial court was commencing a course of conduct that was improper.  Trial counsel made no effort to stop the court's impropriety and, after it occurred, he made no effort to bring it to the jury's attention, which . . . amounted to prejudice.  Furthermore, counsel unreasonably gambled that Ms. Summers would finger Mr. Hayes as the initial shooter.  His unreasonable confidence that she would do so caused trial counsel to ignore the benefit to the defense of having Mr. Singleton exonerate his client.

(Id. at 13.)

The Magistrate Judge also applied de novo review to the second prong of Strickland because she found the Superior Court "failed to apply the correct standard."  (Id. at 14.)  The Magistrate Judge explained that Strickland's second prong asks whether there exists "a reasonable probability that[,]" but for counsel's deficient performance, "the outcome of the proceedings would have been different[.]"  (Id.)  However, "[t]he Superior Court held that Petitioner was required to show that but for the act or omission in question, the outcome of the trial would have been different."  (Id.)  By omitting the language "reasonable probability," the Magistrate Judge found that "the Superior Court misstated the Strickland standard and augmented Petitioner's burden; thus, its decision was clearly contrary to U.S. Supreme Court precedent."  (Id.)

In applying de novo review, Magistrate Judge Wells concluded that Petitioner "suffered sufficient prejudice to satisfy the second prong of the Strickland test" because, "[i]f trial counsel had objected" to the trial court's admonishment of Singleton "and forced the trial judge to consider the propriety of her conduct, there is a reasonable probability . . . that the trial judge would have sustained the objection and stopped the admonition before it degenerated into the damaging

---

a decision that was contrary to, or involved in an unreasonable application of, clearly established Federal law" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).  The AEDPA standard of review is fully discussed in Section IV.A, infra.

threat." (Id. at 15.)  "Alternatively, if the trial judge had refused to sustain counsel's objection, ignored the law, and improperly threatened Mr. Singleton, trial counsel could have cross-examined the witness about the threat."  (Id.)  "With cross-examination that brought the judge's threat to light," Magistrate Judge Wells thought "a reasonable probability existed that the jury would have concluded that Mr. Singleton changed his testimony because of the trial judge's threats, not because he was confused, and[] hence, concluded that Mr. Hayes was the aggressor and convicted Petitioner of voluntary manslaughter."  (Id.)[8]

Regarding Claim Two, Magistrate Judge Wells found in the R&R that—contrary to Respondents assertions—Petitioner "fully exhausted his second claim in his first PCRA appeal to the Superior Court."  (Id. at 18) (citing Rogers, 2017 WL 3496569, at *3).  Nevertheless, Claim Two lacks merit because Petitioner would not be able to satisfy the second element for adequate provocation under McCusker, therefore "counsel's failure to seek a McCusker instruction was reasonable under governing Pennsylvania law." (Id. at 20.)

On March 8, 2021, Respondents filed Objections to the R&R in which they "respectfully disagree with and object to [Claim One's] proposed disposition . . . ."  (Doc. No. 19 at 1.)

---

[8]   Magistrate Judge Wells also thought the Pennsylvania Superior Court inaccurately held "that Petitioner did not suffer prejudice because the two main witnesses and the ballistics evidence were consistent, establishing that Petitioner shot at Mr. Hayes's vehicle as he fled, disproving the self-defense theory." (Doc. No. 16 at 16) (citing Commonwealth v. Rogers, No. 728 EDA 2018, 2019 WL 3103863, at *6 (Pa. Super. Ct. July 15, 2019)).  She found this holding to be inaccurate because Summers testified at trial that "she could not tell who shot first, not that Petitioner shot first." (Id.) (emphasis omitted).  Moreover, "[t]he ballistics evidence also does not disprove the self-defense theory because, if Mr. Hayes shot first and continued to shoot at Petitioner while he drove away, Petitioner returning fire could still establish the imperfect self-defense theory that could reduce murder to manslaughter."  (Id.)  As noted in the R&R, this meant that "Mr. Singleton's testimony was crucial to the prosecution's case[,]" and "[w]ithout his testimony stating that Petitioner shot first, the prosecution was left with inconclusive ballistics evidence and a wavering, uncertain eyewitness."  (Id.)  Therefore, "[t]his demonstrates additional prejudice resulting from trial counsel's unprofessional failures."  (Id.)

Respondents believe the R&R "errs in its determination that [Petitioner] was prejudiced as a result of counsel's allegedly deficient performance[,]" and that the "error appears to rest on an assumption that Singleton's recanted testimony that Hayes fired first was very likely true and that his previous (and subsequent) testimony that Rogers fired first was almost surely false." (Id. at 4) (emphasis omitted). "In reasoning that Singleton would not have testified that Hayes fired first unless it was true, however," Respondents claim the R&R "disregarded without explanation a facially plausible explanation elicited from Singleton by the prosecutor."[9] (Id.) Respondents further note that the R&R's "apparent redetermination of Singleton's credibility, particularly on a cold record, is not a proper part of a federal habeas court's analysis." (Id.) (citing Marshall v. Lonberger, 459 U.S. 422, 434 (1983); Vickers v. Superintendent Graterford SCI, 858 F.3d 841, 850 n.9 (3d Cir. 2017)).

With respect to the second prong of Strickland, Respondents contend that the "reasonable probability" threshold requires "'[t]he likelihood of a different result . . . be substantial, not just conceivable.'" (Id. at 5) (quoting Harrington v. Richter, 562 U.S. 86, 112 (2011)). Therefore, they contend that the Magistrate Judge erroneously disregarded the "authoritative and binding" state court determination that "Singleton's initial less-bad-for-the-defense trial testimony would not have substantiated a legally valid claim of even 'imperfect' self-defense [for Petitioner] under state law." (Id. at 6) (emphasis omitted). "Rejecting the state court determination that Singleton's initial testimony, even if credited, would not have substantiated a legally valid defense, the [R&R] opined that if Hayes had fired first, even ballistics evidence would 'not disprove the self-defense theory'

---

[9]   "[T]he prosecutor elicited from Singleton a reason for his initial unexpected Hayes-fired-first testimony that was facially plausible and regrettably common: the presence of [Petitioner's] partisans who had been sitting in the courtroom (suggesting, at a minimum, a desire not to be publicly perceived as actively assisting the prosecution at [Petitioner's] trial)." (Doc. No. 19 at 13.)

because, if Hayes 'continued to shoot at [Petitioner] while he drove away, [Petitioner] returning fire could still establish the imperfect self-defense theory that could reduce murder to manslaughter.'"  (Id. at 7) (quoting Doc. No. 16 at 16.)[10]  According to Respondents, however, "[t]hat conclusion, . . . is not supported by law or fact."  (Id.)[11]  "In short, [Petitioner] failed to establish even a reasonable probability that Singleton's testimony would have unfolded differently had counsel objected to the perjury warning, let alone a reasonable probability that the trial's outcome would have been different."  (Id. at 11.)

As for Claim Two, Respondents "agree with the determination that this claim failed on the merits but respectfully disagree with and object to the conclusion that it was properly exhausted in state court."  (Id. at 15.)  They maintain that Claim Two is procedurally defaulted because Petitioner "abandon[ed] . . . the claim on subsequent [PCRA] appeal [to the Superior Court] following the evidentiary hearing."  (Id.)  Nevertheless, "[g]iven the [R&R's] correct determination that this claim lacks merit[,]" Respondents submit that "there was (and is) no need to rule on the exhaustion issue."  (Id.)  "It would have been sufficient for the [R&R] (and for this Court now) to assume exhaustion without deciding the issue."  (Id.)

Respondents' Objections (Doc. No. 19) are now before this Court for review.

---

[10]  See supra note 8.

[11]  Respondents also point out that the trial court gave "a voluntary manslaughter [jury] instruction explaining that [Petitioner] had a viable claim of 'imperfect' self-defense only to the extent that he sincerely but unreasonably believed that the use of deadly force remained necessary to protect himself from an immediate threat of death or serious bodily injury[.]"  (Doc. No. 19 at 7-8.)  And during jury deliberations, "the jury sent the court the following question: 'Could there be a circumstance when self-defense is an initial justification, yet, as conditions change, the person who initially claims it is now acting aggressively, and using force not warranted by the ongoing situation?'"  (Id. at 9.)  Respondents thus contend that, "contrary to the [R&R's] assumption that Singleton's account of who fired first was 'critical,' all indications are that the jury questioned whether it was ultimately even necessary to decide if [Petitioner] would have lacked a valid claim of complete or even 'imperfect' self-defense either way."  (Id. at 10.)

## III.     STANDARD OF REVIEW

Under 28 U.S.C. § 636(b)(1)(B) and the local rules of this Court, a district judge is permitted to designate a magistrate judge to make proposed findings and recommendations on petitions for post-conviction relief.  Any party may file objections in response to the magistrate judge's Report and Recommendation.  See § 636(b)(1)(C).  Whether or not an objection is made, a district judge "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  Id.  "The [district] judge may also receive further evidence or recommit the matter to the magistrate judge with further instructions."  Id.  "[I]t must be assumed that the normal practice of the district judge is to give some reasoned consideration to the magistrate's report before adopting it as the decision of the court."  Henderson v. Carlson, 812 F.2d 874, 878 (3d Cir. 1987); see also § 636(b).

In the Eastern District of Pennsylvania, Local Rule 72.1.IV(b) governs objections to a magistrate judge's report and recommendation.  Under the rule, the objecting party must "specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections."  Savior v. Superintendent of Huntingdon SCI, No. 11-5639, 2012 WL 4206566, at *1 (E.D. Pa. Sept. 20, 2012).  Upon review, "[a district judge] shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."  § 636(b)(1)(C).  De novo review is non-deferential and generally permits the district court to conduct an "independent review" of the entire matter.  Salve Regina Coll. v. Russell, 499 U.S. 225, 238 (1991).  "Although [the] review is de novo, [a district judge] [is] permitted, by statute, to rely upon the magistrate judge's proposed findings and recommendations to the extent [the judge], in the exercise of sound discretion, deem[s] proper."  Owens v. Beard, 829 F. Supp. 736, 738 (M.D. Pa. 1993) (citing United States v. Raddatz, 447 U.S. 667, 676 (1980)).

16

IV.     **ANALYSIS**

As noted, Petitioner raises two claims for relief in his Petition: ineffective assistance of trial counsel for (1) "fail[ure] to object to the trial court['s] admonishment of the Commonwealth's key witness Tyrone Singleton" (Claim One); and for (2) "fail[ure] to bring forth evidence of the violent history between the Petitioner and the victim Demetrius Hayes, and request a McCusker charge after revealing the provocation was established prior to the exchange between both parties" (Claim Two).  (Doc. No. 1 at 6, 9.)  In the R&R, Magistrate Judge Wells recommended that Claim One be granted, and Claim Two be denied without an evidentiary hearing.  (See Doc. No. 16 at 21.)

Respondents object to the R&R's resolution of Claim One for several reasons.  (See Doc. No. 19 at 2-13.)  As for Claim Two, they "agree with the ultimate recommendation to deny relief on the merits but respectfully disagree with and object to the determination that the claim was properly exhausted in state court[.]"  (Id. at 1.)  Both Objections will be discussed in turn.

A.     **Respondents' First Objection Will Be Sustained**

To start, Respondents' Objection to the R&R's resolution of Claim One will be sustained. The Court agrees with the reasons Respondents believe the R&R erroneously resolved Claim One; however, the Court separately finds that the R&R erroneously reviewed Claim One de novo.  In applying the proper, deferential standard of review pursuant to 28 U.S.C. § 2254(d), the state courts reasonably concluded that trial counsel was not ineffective for failing to object to the court's admonition of Singleton or cross-examine Singleton about it.

17

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal habeas petition may not be granted on any claim which was adjudicated on the merits[12] in state court proceedings unless the petitioner can show that the adjudication of claims either:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The AEDPA requires federal habeas courts to conduct a highly deferential review of state court legal and factual determinations. See Palmer v. Hendricks, 592 F.3d 386, 392 (3d Cir. 2010) ("AEDPA requires federal courts collaterally reviewing state proceedings to afford considerable deference to state courts' legal and factual determinations.").

A state court ruling is "contrary to" clearly established federal law[13] "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases." Williams v. Taylor, 529 U.S. 362, 405-06 (2000). A state court ruling constitutes an "unreasonable application" of United States Supreme Court precedent if it identifies the correct governing law from Supreme Court decisions but "unreasonably applies it to the facts of the particular state prisoner's case." Id. at 407-08. The state court's ruling must be "objectively unreasonable, not merely wrong[,]"[14] and

---

[12]  If a state court did not adjudicate a claim on the merits, the deferential standard of the AEDPA does not apply. See Palmer v. Hendricks, 592 F.3d 386, 392 (3d Cir. 2010). Instead, in such cases "the federal habeas corpus court must conduct a de novo review over pure legal questions and mixed questions of law and fact . . . ." Appel v. Horn, 250 F.3d 203, 210 (3d Cir. 2001). Here, it is undisputed that the state courts adjudicated Claim One on the merits.

[13]  The United States Supreme Court has defined clearly established federal law as "the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." Lockyear v. Andrade, 538 U.S. 63, 71-72 (2003).

[14]  Virginia v. LeBlanc, 137 S. Ct. 1726, 1728 (2017) (internal citation omitted).

18

its factual findings must be presumed correct unless the petitioner can show otherwise by clear and convincing evidence.  See 28 U.S.C. § 2254(e)(1); see also Miller-El v. Cockrell, 537 U.S. 322, 340-41 (2003).

When addressing the merits of ineffective assistance of counsel claims on habeas review, the "clearly established federal law" applicable to such claims is the familiar two-pronged inquiry articulated by the Supreme Court in Strickland v. Washington, 466 U.S. 668 (1984).  See Williams, 529 U.S. at 363.   Under the first prong of Strickland, a petitioner must show that counsel's performance was deficient, that is, "that counsel's representation fell below an objective standard of reasonableness."  Strickland, 466 U.S. at 687-88.   Under the second prong, a petitioner must show that counsel's "deficient performance prejudiced the defense."  Id. at 687.   A petitioner establishes prejudice by demonstrating that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Id. at 694.   But "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the [petitioner] must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy."  Id. at 689 (internal citation omitted).

### 1.    **Strickland First Prong: Deficient Performance**

As a refresher, Petitioner raised the same issue that is in Claim One when he appealed the PCRA court's denial of his PCRA petition to the Pennsylvania Superior Court.  See Rogers, 2019 WL 3103863, at *1.   In addressing the first prong of Strickland, the Superior Court opined as follows:

> At the outset, it is important to note that [Petitioner's] defense at trial was self-defense, premised on the claim that Hayes fired first.  Following the evidentiary hearing on remand, the PCRA court summarized trial counsel's evidentiary hearing testimony as follows:

At the evidentiary hearing after remand, trial counsel explained that his basis for not objecting to the [c]ourt's admonishment of Singleton, and not bringing out the court's admonishment before the jury, was that he did not want to adopt Singleton as a witness for the defense. Trial counsel fully expected Singleton to testify that [Petitioner] was the initial shooter and based his defense on that fact. Counsel's defense was that Singleton should not be believed because he was Hayes' friend and a passenger in the vehicle that was shot at numerous times.  A reasonable person would fully expect Singleton to be adverse to [Petitioner] as he was a party with interest and bias.  Furthermore, Singleton had convictions for crimes of dishonesty and was currently incarcerated.  In contrast, the defense had an independent witness with no criminal background[:] Myra Summers.  Summers was driving directly behind Hayes' vehicle and gave a statement to detectives that the person in the vehicle shot first. This was the witness the Defense wanted the jury to believe.  It would be much more implausible for the jury to accept Singleton's newfound testimony that his friend shot first, particularly in light of the three prior statements given by Singleton that [Petitioner] shot first.  Quite simply, it would not benefit the defense for Singleton to change his testimony so there would be no reason for counsel to object to the court's admonishment.

PCRA court opinion, 6/26/18 at 10.

Our review of the record reveals that the PCRA court accurately summarized trial counsel's testimony as to why he did not object to the trial court's admonishment of Singleton and place the admonishment in front of the jury.  Indeed, trial counsel repeatedly testified that he had no basis for objecting to the admonishment because regardless of how Singleton testified, his testimony would not have been determinative because he lacked credibility.  Trial counsel further testified that the most credible defense witness was Ms. Summers who happened to be travelling in a vehicle behind the Hayes vehicle, witnessed the shooting, and had no connection to any individual involved in the shooting.  Based on trial counsel's testimony, the PCRA court properly determined that counsel had a reasonable basis for failing to object to the trial court's admonishment of Singleton and for failing to place the admonishment in front of the jury.  Therefore, [Petitioner] failed to satisfy the reasonable basis prong of the ineffectiveness inquiry and the PCRA court properly denied his petition.

Id. at *4-5.  Upon consideration of this ruling, the Magistrate Judge found in the R&R that:

The Superior Court identified the correct standard for the first prong of the ineffective assistance of counsel test, reasonableness; hence its decision is not contrary to Strickland.  However, the state court's application of the standard was unreasonable.  Therefore, no AEDPA deference is required.  Application of de novo

review to the record, reveals that trial counsel's representation fell below an objective standard of reasonableness, satisfying the first part of the Strickland test.

(Doc. No. 16 at 11.)

As previously stated, when a federal court reviews the state court's rejection of a petitioner's ineffective assistance of counsel claim pursuant to the AEDPA, codified in 28 U.S.C. § 2254, it must be "highly deferential" to the state court's decision unless the decision is contrary to clearly established federal law, or its application of clearly established federal law is objectively unreasonable. See Renico v. Lett, 559 U.S. 766, 773 (2010). And because "[t]he standards created by Strickland and § 2254(d) are both 'highly deferential,' . . . when the two apply in tandem" federal habeas review is "doubly deferential." Harrington v. Richter, 562 U.S. 86, 105 (2011); Yarborough v. Gentry, 540 U.S. 1, 4 (2003).

In Harrington v. Richter, the United States Supreme Court discussed AEDPA deference under § 2254(d) when reviewing a federal habeas court's determination that a state court unreasonably applied Strickland. 562 U.S. at 99, 101. In reversing the holding of the federal habeas court, the Supreme Court explained that "[e]stablishing that a state court's application of Strickland was unreasonable under § 2254(d) is . . . difficult." Id. at 105. "Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." Id. at 102-03 (quoting Jackson v. Virginia, 443 U.S. 307, 332 n.5 (1979) (Stevens, J., concurring)). Therefore, to obtain habeas relief from a federal court, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Id. at 103.

The Court further opined that "[e]valuating whether a rule application was unreasonable requires considering the rule's specificity.  The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations."  Id. at 101 (citation omitted).  And because "[t]he Strickland standard is a general one, . . . the range of reasonable applications is substantial." Id. at 105; see also Shinn v. Kayer, 141 S. Ct. 517, 523 (2020) (quoting Knowles v. Mirzayance, 556 U.S. 111, 123 (2009)) ("[B]ecause the Strickland standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard.").

Recently, the United States Supreme Court emphasized "the special importance of the AEDPA framework in cases involving Strickland claims."  Shinn, 141 S. Ct. at 523.  In Shinn v. Kayer, a federal district court denied a petitioner's § 2254 petition on the ground that the petitioner failed to show prejudice under Strickland.  See id. at 521.  The Ninth Circuit Court of Appeals reversed, finding that the state court unreasonably applied Strickland, and that "trial counsel's alleged failings likely affected [the petitioner's] sentence."  Id. at 522.  The Supreme Court vacated and remanded the Ninth Circuit's decision because it was "fundamentally inconsistent with [the] AEDPA."  Id. at 523.

The Court explained that the Ninth Circuit "essentially evaluated the merits de novo, . . . . but in so doing[, it] impermissibly substituted its own judgment for that of the state court instead of applying deferential review" pursuant to the AEDPA.  Id. at 523-24 (internal quotations omitted).  The Court made clear that "[f]ederal courts may not disturb the judgments of state courts unless 'each ground supporting the state court decision is examined and found to be unreasonable.'"  Id. at 524 (quoting Wetzel v. Lambert, 565 U.S. 520, 525 (2012) (per curiam)). "Thus, if a fairminded jurist could agree with either [the state court's] deficiency or prejudice

holding, the reasonableness of the other is 'beside the point.'"  Id.  The Court then concluded as follows:

> Under [the] AEDPA, state courts play the leading role in assessing challenges to state sentences based on federal law.  A state court heard [the petitioner's] evidence and concluded that he failed to show prejudice.  The court below exceeded its authority in rejecting that determination, which was not so obviously wrong as to be "beyond any possibility for fairminded disagreement."  Under § 2254(d), that is the only question that matters.

Id. at 526 (citations and quotations omitted).

Here, the Magistrate Judge held in the R&R that the state court's application of Strickland's first prong was unreasonable because "[t]he state court's acceptance of trial counsel's explanations for why he acquiesced in the trial court's impropriety [was] unreasonable."  (Doc. No. 16 at 11.) She also believed the state court unreasonably determined "that trial counsel's conduct was reasonable[] because the defense already had [Ms. Summers,] an independent witness with no criminal background[.]"  (Id. at 12.)  According to the Magistrate Judge, "[t]his was unreasonable because, at trial, Ms. Summers proved to be an inconsistent witness, who testified (contrary to her police statement) that she could not determine who shot first, thereby, undermining trial counsel's preferred self-defense theory."  (Id. at 13.)  In addition, the Magistrate Judge found that the state court's reasoning "that it would not benefit the defense for Mr. Singleton to change his testimony because it would demonstrate that he was an unreliable witness" was unreasonable because "[t]wo favorable eyewitnesses are better than one."  (Id.)

In light of Richter and Shinn, it is evident that the Magistrate Judge erred in concluding that the Pennsylvania Superior Court unreasonably applied the first prong of Strickland, and thus erred in applying de novo review rather than AEDPA deferential review.  Given that the Superior Court detailed the reasons why it thought Petitioner failed to satisfy the first prong of Strickland, this Court is not convinced that the state court decision was "so obviously wrong as to be 'beyond

any possibility for fairminded disagreement.'" <u>Shinn</u>, 141 S. Ct. at 526 (quoting <u>Richter</u>, 562 U.S. at 103).  While the R&R may have thought "some jurists would share [its] views, . . . that is not the relevant standard." <u>Id.</u> at 525.  Rather, "[t]he question is whether a fairminded jurist could take a different view." <u>Id.</u>

Moreover, as Respondents note in their Objection, the R&R seems to reach its conclusion by making credibility determinations as to the testimony of Singleton and Summers.  (<u>See</u> Doc. No. 16 at 11-13.)  But § 2254(d) "gives federal habeas courts no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them." <u>Marshall</u>, 459 U.S. at 434.  And even assuming, <u>arguendo</u>, that the Magistrate Judge properly reviewed Claim One <u>de novo</u>, it should have still "presume[d] that state-court factual findings— including its credibility findings—[were] correct unless the presumption [was] rebutted by clear and convincing evidence[.]" <u>Vickers</u>, 858 F.3d at 850 (quotations omitted) (quoting <u>Breakiron v. Horn</u>, 642 F.3d 126, 131 (3d Cir. 2011); <u>Jacobs v. Horn</u>, 395 F.3d 92, 100 (3d Cir. 2005)).[15]

For all these reasons, this Court thus declines to adopt the conclusion in the R&R regarding the first prong of <u>Strickland</u>.  An "independent review"[16] of the entire matter makes clear that the state courts reasonably applied the first prong.  The PCRA court held that trial counsel was not deficient for failing to object to the court's admonishment of Singleton because "it would not

---

[15]  <u>See also</u> <u>Vickers v. Superintendent Graterford SCI</u>, 858 F.3d 841, 850 n.9 (3d Cir. 2017) (explaining that even where "AEDPA deference is inapplicable[,] . . . . credibility findings . . . are also presumed correct absent 'clear and convincing evidence' to the contrary"); <u>Harrington v. Richter</u>, 562 U.S. 86, 105 (2011) (citation omitted) ("Even under <u>de novo</u> review, the standard for judging counsel's representation is a most deferential one.  Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge.  It is 'all too tempting' to 'second-guess counsel's assistance after conviction or adverse sentence.'").

[16]  <u>Salve Regina Coll. v. Russell</u>, 499 U.S. 225, 238 (1991).

[have] benefit[ted] the defense for Singleton to change his testimony[.]"  (Doc. No. 8-3 at 10);

Rogers, 2019 WL 3103863, at *5.  On appeal, the Superior Court found that Petitioner failed to

satisfy the first prong of Strickland because "the PCRA court properly determined that counsel had

a reasonable basis for failing to object to the trial court's admonishment of Singleton and for failing

to place the admonishment in front of the jury."  Rogers, 2019 WL 3103863, at *5.

The state courts had wide latitude to reasonably determine that Petitioner did not satisfy

the first prong of Strickland, see Shinn, 141 S. Ct. at 523; therefore, the AEDPA deferential

standard of review must apply.  And because federal habeas review of ineffective assistance of

counsel claims is "doubly deferential," see Yarborough, 540 U.S. at 6, this Court will not adopt the

pertinent portion of the R&R.

### 2.    **Strickland Second Prong: Prejudice[17]**

Under the second prong of Strickland, a petitioner must show that counsel's "deficient

performance prejudiced the defense."  Strickland, 466 U.S. at 687.  Prejudice is established if the

petitioner shows that "there is a reasonable probability that, but for counsel's unprofessional errors,

the result of the proceeding would have been different."  Id. at 694.

Similar to the first Strickland prong, the Magistrate Judge in the R&R also reviewed this

prong de novo rather than applying the AEDPA deferential standard because she found that "[t]he

[Pennsylvania] Superior Court's treatment of the second part of the Strickland test was contrary to

---

[17]    Because Petitioner must satisfy both prongs of Strickland to prove ineffective assistance of
counsel, and because the state courts reasonably determined that Petitioner failed to prove the
first Strickland prong, the Court normally need not address the second prong.  See Strickland,
466 U.S. at 697 ("[T]here is no reason for a court deciding an ineffective assistance claim . . .
to address both components of the inquiry if the defendant makes an insufficient showing on
one.").  However, the Court must review the R&R's resolution of the second Strickland prong
because Respondents objected to the R&R's resolution of Claim One in its entirety.  See 28
U.S.C. § 636(b)(1)(C) ("A judge of the court shall make a de novo determination of those
portions of the report or specified proposed findings or recommendations to which objection
is made.").

U.S. Supreme Court precedent[.]"  (Doc. No. 16 at 14.)  Specifically, the Magistrate Judge found the Superior Court "failed to apply the correct standard" because it "held that Petitioner was required to show that but for the act or omission in question, the outcome of the trial <u>would have been different</u>.  However, <u>Strickland</u> only requires Petitioner to show that the errors or omissions of counsel cause a <u>reasonable probability</u> that the outcome of the proceedings would have been different."  (<u>Id.</u>) (citations omitted).  "By requiring a preponderance for prejudice"—rather than a reasonable probability—the Magistrate Judge found that "the Superior Court misstated the <u>Strickland</u> standard and augmented Petitioner's burden; thus, its decision was clearly contrary to U.S. Supreme Court precedent."  (<u>Id.</u>)

In Respondents' Objections, they argue, <u>inter alia</u>, that while the R&R "points out repeatedly that the threshold for establishing a reasonable probability of a different outcome is 'less than a preponderance[,]' . . . . the Supreme Court has also admonished that 'the difference between <u>Strickland</u>'s prejudice standard and a more-probable-than-not standard' is so 'slight' as to 'matter[] only in the rarest case' and that '[t]he likelihood of a different result must be substantial, not just conceivable.'"  (Doc. No. 19 at 5) (quoting <u>Richter</u>, 562 U.S. at 112; then citing <u>Shinn</u>, 141 S. Ct. at 523 and <u>Cullen v. Pinholster</u>, 563 U.S. 170, 189 (2011)).  The Court agrees.

To begin with, it is unclear whether the Pennsylvania Superior Court applied a standard that was "contrary to" <u>Strickland</u>'s second prong when it affirmed the PCRA court's denial of Petitioner's PCRA petition.  In addressing the second prong, the Superior Court started by explaining:

> In order to establish prejudice, . . . a petitioner is required to "show that but for the act or omission in question, the outcome of the proceedings would have been different."  <u>Washington</u>, 925 A.2d at 594 (citation and internal quotation marks omitted).  [Petitioner's] claim that if the jury believed Singleton, "there was a reasonable probability a different outcome would have occurred" falls far short of

> establishing that but for trial counsel's failure to object and place the admonishment
> in front of the jury, the outcome would have been different.

Rogers, 2019 WL 3103863, at *5.[18]  However, in ultimately concluding that Petitioner failed to

demonstrate prejudice, the Superior Court quoted and adopted the rationale of the PCRA court—

which reached its conclusion by correctly stating that "Petitioner would have to show that there

was a reasonable probability that the result of his trial would have been different[.]"  (Doc. No. 8-

3 at 11) (emphasis added).

In any event, the Court need not determine whether the Superior Court's decision was

"contrary to" Strickland because—under either the AEDPA deferential standard or a de novo

standard of review—the Superior Court's decision should not be disturbed.  In Strickland, the

Supreme Court acknowledged that "[w]ith regard to the prejudice inquiry," a more-likely-than-not

standard "imposes a heavier burden on defendants" than the reasonable probability standard.

Strickland, 466 U.S. at 697.  "The difference, however, should alter the merit of an ineffectiveness

claim only in the rarest case."  Id.; see also Richter, 562 U.S. at 112 ("[T]he difference between

Strickland's prejudice standard and a more-probable-than-not standard is slight and matters 'only

in the rarest case.'").  The Court has since reiterated that "[a] reasonable probability means a

'substantial,' not just 'conceivable,' likelihood of a different result."  Shinn, 141 S. Ct. at 523

(quotations omitted).  "It is not enough to show that the errors had some conceivable effect on the

outcome of the proceeding.  Counsel's errors must be so serious as to deprive the defendant of a

---

[18]  See also Williams v. Taylor, 529 U.S. 362, 405-06 (2000) ("If a state court were to reject a
prisoner's claim of ineffective assistance of counsel on the grounds that the prisoner had not
established by a preponderance of the evidence that the result of his criminal proceeding would
have been different, that decision would be 'diametrically different,' 'opposite in character or
nature,' and 'mutually opposed' to our clearly established precedent because we held in
Strickland that the prisoner need only demonstrate a 'reasonable probability that . . . the result
of the proceeding would have been different.'").

fair trial, a trial whose result is reliable." Richter, 562 U.S. at 104 (internal quotations and citations omitted).

With this in mind, this Court is not convinced that the Superior Court ruling should be disturbed. As noted above, the Superior Court adopted the following excerpt from the PCRA court opinion to conclude that Petitioner had not proven prejudice:

> Had Counsel brought out before the jury that Mr. Singleton's testimony could possibly have been coerced by the [c]ourt, irregardless [sic], Mr. Singleton's testimony was still inconsistent testimony because there is a track record. He gave a statement to police. He testified at the preliminary hearing. He testified at a prior trial just a week earlier. So what we would have is still an unreliable witness.
>
> Secondly, all witnesses were consistent, and that being Mr. Singleton, and Miss Summers and ballistics, basically, that [Petitioner's] weapon, being held by [Petitioner], continued to fire at a vehicle that was fleeing, thereby, hitting an innocent bystander with a bullet.
>
> It was proven that it was [Petitioner's] gun because [Petitioner] was arrested with that particular weapon two months later that fired the fatal bullet and that nine fired cartridge casings were found at the scene and there was testimony that the vehicle was riddled with bullets or had bullet holes in it and the vehicle took off immediately upon shots being fired, indicating that whoever was firing the weapon, [Petitioner] continued to fire at a fleeing vehicle which no longer posed a threat to [Petitioner], thereby, hitting an innocent bystander.
>
> So that would not make out self-defense nor would it qualify under voluntary manslaughter or a mistaken belief in self-defense. So it really would not have changed the result of the proceedings.

See Rogers, 2019 WL 3103863, at *5-6. Given this evidence, "[t]here was ample basis for the [Pennsylvania Superior Court] to think any real possibility of [Petitioner] being acquitted [or convicted of a lesser crime] was eclipsed by the remaining evidence pointing to guilt." Richter, 562 U.S. at 113.

At bottom, "state-court judgments must be upheld unless, after the closest examination of the state-court judgment, a federal court is firmly convinced that a federal constitutional right has been violated." Id. at 389. For all the reasons in Sections IV.A.1 and 2, supra, this Court is not

firmly convinced that Petitioner's Sixth Amendment rights were violated by ineffective assistance of counsel.  Accordingly, Respondents' Objection to the R&R's resolution of Claim One will be sustained, and the Court will not adopt the R&R as to Claim One.

### B.    Respondents' Second Objection Will Be Sustained

In Claim Two, Petitioner argues ineffective assistance of trial counsel for "fail[ure] to bring forth evidence of the violent history between the Petitioner and . . . Demetrius Hayes," and for failure to "request a McCusker charge after revealing the provocation was established prior to the exchange between both parties."  (Doc. No. 1 at 9.)  At the state court level, Petitioner raised this claim in his first PCRA appeal to the Pennsylvania Superior Court.  See Rogers, 2017 WL 3496569, at *3.  The Superior Court declined to address the claim in light of its remand to the PCRA court for an evidentiary hearing.  See id. at *5 & n.12.  Petitioner did not re-brief the claim in his second, post-hearing appeal.  (See Doc. Nos. 16 at 18; 19 at 14.)

The Magistrate Judge concluded in the R&R that "Petitioner fully exhausted [Claim Two] in his first PCRA appeal to the Superior Court[,]" but the claim "lacks merit because counsel's failure to seek a McCusker instruction was reasonable under governing Pennsylvania law."  (Doc. No. 16 at 18, 20.)  The Magistrate Judge explained that McCusker sets forth a three-prong test for establishing adequate provocation: "First, did the defendant actually act in the heat of passion when he committed the homicide?  Second, did the provocation directly lead to the killing of the person responsible for the provocation?  Third, was there insufficient cooling time to prevent a reasonable man from using his reasoning faculties and capacity to reflect?"  (Id.) (citations omitted).  "If any of these elements are missing, the defendant's provocation defense fails[.]"  (Id.)  Since "Petitioner killed an innocent bystander, not his instigator, Mr. Hayes[,]" Petitioner "clearly fails to satisfy the second element."  (Id.)  Thus, the Magistrate Judge held that "Petitioner's trial counsel properly omitted a jury instruction based upon McCusker," and Petitioner "cannot

establish that trial counsel was ineffective for failing to request the unwarranted jury instruction."
(Id.)

Respondents agree with the R&R's "determination that this claim failed on the merits[,] but respectfully disagree with and object to the conclusion that it was properly exhausted in state court." (Doc. No. 19 at 15.)  They aver that under § 2254(c), a petitioner "shall not be deemed to have exhausted the remedies available in the courts of the State . . . if he has the right under the law of the State to raise, by any available procedure, the question presented[,]" and under Supreme Court precedent, a "fair presentation of a federal claim through 'one complete round of the State's established appellate review process' is <u>necessary</u> to exhaust the claim for federal habeas review[.]"  (Id. at 15-16) (quoting 28 U.S.C. § 2254(c); O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999)).  Respondents therefore aver that Petitioner did not properly exhaust Claim Two because "one complete round of the State's established appellate review process includes, after a remand for a hearing, re-briefing any claims for which an appellate ruling has not yet been made but is desired."  (Id. at 16) (internal quotations omitted).

Indeed, claims for relief in a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 can only be granted if the petitioner "has exhausted the remedies available in the courts of the State[.]"  § 2254(b)(1)(A).  A petitioner properly exhausts state court remedies "by invoking one complete round of the State's established appellate review process[,]" thus giving the state courts "one full opportunity to resolve any constitutional issues[.]"  O'Sullivan, 526 U.S. at 845. A petitioner "shall not be deemed to have exhausted the remedies available in the courts of the State, . . . if he has the right under the law of the State to raise, by any available procedure, the question presented."  § 2254(c).  Under the Pennsylvania Rules of Appellate Procedure, "an appeal may be taken as of right from any final order[.]"  Pa. R. App. P. 341(a).  Orders disposing of all or

part of a PCRA petition constitute final, appealable orders.  See Pa. R. App. P. 341(f).

Here, Respondents correctly assert that Petitioner did not fully exhaust Claim Two in state court because he chose not to re-brief the claim on his post-hearing appeal to the Superior Court. On his first PCRA appeal, the Superior Court "decline[d] to address" the claim because it remanded for an evidentiary hearing.  Rogers, 2017 WL 3496569, at *5 n.12.  After the PCRA court conducted the evidentiary hearing and subsequently denied Petitioner's PCRA petition, Petitioner did not re-brief Claim Two in his second PCRA appeal to the Superior Court.  Since Petitioner did not re-brief the claim when exercising his right to appeal pursuant to the Pennsylvania Appellate Rules of Procedure, he did not fully "exhaust[] the remedies available in the courts of" Pennsylvania.[19]  § 2254(c).

Nevertheless, Respondents also are correct that federal courts can deny a claim on the merits "notwithstanding the failure of the [petitioner] to exhaust the remedies available in the courts of the State."  § 2254(b)(2).  As noted above, the Magistrate Judge in the R&R addressed the merits of Claim Two and held that Petitioner "failed to satisfy the first part of the Strickland test" since he "cannot establish that trial counsel was ineffective for failing to request the [McCusker] jury instruction." (Doc. No. 16 at 20.)  The Magistrate Judge explained that Petitioner cannot establish the second element of the McCusker test for adequate provocation—that the provocation directly lead to the killing of the person responsible for the provocation—because

---

[19]   See Jacobs v. Folino, No. 07-925, 2011 WL 1770899, at *10 (E.D. Pa. May 9, 2011) ("Petitioner's claims related to his alibi defense were abandoned in his PCRA appeal and are, thus, unexhausted."); Lee v. Harlow, No. 1:11-1909, 2012 WL 7659862, at *4 (M.D. Pa. Dec. 11, 2012), report and recommendation adopted, No. 1:11-1909, 2013 WL 866870 (M.D. Pa. Mar. 7, 2013) ([T]he Superior Court remanded the case back to the trial court for an evidentiary hearing.  The Petitioner did not raise this issue in his subsequent appeal to the Superior Court, thus, the Superior Court did not consider the merits of his Fifth Amendment claim on direct appeal.").

"Petitioner killed an innocent bystander, not his instigator[.]"  (Id.)  Therefore, "Petitioner's trial counsel properly omitted a jury instruction based upon McCusker" and "[c]ounsel's conduct was reasonable."  (Id.)  Respondents agree with this determination, (see Doc. No. 19 at 15), as does this Court.

Accordingly, Respondents' second Objection will be sustained.  The Court will decline to adopt the R&R's resolution of Claim Two as to exhaustion and will approve and adopt the R&R's resolution of Claim Two on the merits.

## V.    CONCLUSION

For the foregoing reasons, the Court will decline to adopt Magistrate Judge Wells' Report and Recommendation (Doc. No. 16) on Claim One, will decline to adopt the Report and Recommendation on Claim Two as to exhaustion, and will approve and adopt the Report and Recommendation for Claim Two on the merits.  Petitioner Rogers' § 2254 Petition for a Writ of Habeas Corpus (Doc. No. 1) will be denied.  A Certificate of Appealability shall issue as to both Claims.  An appropriate Order follows.